

**UNITED STATES DISTRICT COURT**
**DISTRICT OF SOUTH DAKOTA**
**NORTHERN DIVISION**

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

|  |  |  |
|---|---|---|
| ROSANNE E. MILLER, | * | CIV. 06-1039 |
| | * | |
| Plaintiff, | * | |
| | * | |
| -vs- | * | **REPORT and RECOMMENDATION** |
| | * | |
| MICHAEL J. ASTRUE[1], | * | |
| Commissioner of Social Security | * | |
| Administration, | * | |
| | * | |
| Defendant. | * | |
| | * | |

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

Plaintiff seeks judicial review of the Commissioner's final decision denying her a period of disability commencing on May 15, 2001, and payment of disability insurance and medical benefits under Title II of the Social Security Act. The Plaintiff has moved for summary judgment (Doc. 20) and has requested the Court to enter an order instructing the Commissioner to award benefits. Alternatively, the Plaintiff requests a remand pursuant to 42 U.S.C. § 405(g) sentence four, with instructions to: (1) fully develop the record; and (2) issue a new decision based on substantial evidence in the record as a whole and proper legal standards.

The matter is fully briefed and has been referred to the Magistrate Judge for a Report and Recommendation. For the reasons more fully explained below, it is respectfully recommended to the District Court that the Plaintiff's Motion for Summary Judgment (Doc. 20) be **DENIED**.

### JURISDICTION

This appeal of the Commissioner's final decision denying benefits is properly before the District Court pursuant to 42 U.S.C. § 405(g). Judge Kornmann referred this matter to the Magistrate Judge for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(A) and his

---

[1]Pursuant to 42 U.S.C. 405(g), Michael Astrue has been substituted for JoAnne Barnhart as the named Defendant. Mr. Astrue was sworn in as the Commissioner of the Social Security Administration on February 12, 2007.

Order dated May 23, 2007 (Doc. 24).

## ADMINISTRATIVE PROCEEDINGS[2]

Plaintiff filed her application for benefits on July 23, 2003.  AR 68-70.  In a form entitled "Disability Report–Adult" (AR 76-85) Plaintiff listed the following as illnesses, injuries or conditions that limited her ability to work: "I have had multiple sclerosis now for 18 ½ yrs." Plaintiff's claim was denied initially in February, 2004 (AR 46) and on reconsideration in April, 2004 (AR 51-53).  She requested a hearing (AR 54) and a partial hearing was apparently held on May 4, 2005.  No transcript is available, but during the second hearing the Administrative Law Judge (ALJ) indicated he began but postponed the first hearing to facilitate further neurological evaluation of the Plaintiff.  AR 242.  Plaintiff was represented by the same attorney at both hearings.  After receipt of the neurological evaluation which was ordered by the ALJ but before the second hearing, the  attorney sent the ALJ a letter requesting more testing and an evaluation by a rehabilitation specialist. AR 127.

The second hearing was held on January 27, 2006, before ALJ the Honorable James Geyer. AR 240-280.  On March 30, 2006, the ALJ issued a sixteen page, single-spaced decision affirming the previous denials.  AR 13-28.  On May 19, 2006, Plaintiff requested the Appeals Council to review the ALJ's decision  AR 9, but the Appeals Council denied review on August 2, 2006.  AR 5-7.  Plaintiff then timely filed her Complaint in the District Court on October 6, 2006.[3]

---

[2]The Administrative Record of the proceedings before the Social Security Administration have been received as Doc. 16.  Citations to the record will be by "AR" followed by the appropriate page number.

[3]Initially  it appears Plaintiff's Complaint was not timely in light of the plain language of 42 U.S.C. § 405(g) which requires a civil action to be commenced within "sixty days after the mailing . . of notice of [the Commissioner's decision.]"  The Appeals Council denial is dated August 2nd and Plaintiff's Complaint was filed October 6th.  The Eighth Circuit has held that failure to timely file a request for review deprives the District Court of jurisdiction to hear a Social Security appeal.  *White v. Sullivan*, 901 F.2d 94, 95 (8th Cir. 1990).  Section 405(g), however,  also allows filing "within such further time as the Commissioner of Social Security may allow."  This phrase has been interpreted to encompass the more liberal regulations (20 C.F.R.§§ 404.901 and 981) which allow the civil action to be filed within sixty days of the date the Plaintiff receives notice of the Appeals Councils' action.  Notice is presumed to be received

## FACTUAL BACKGROUND

### A.      Hearing Testimony and Documentary Evidence

Plaintiff was born on September 29, 1955 and was fifty years old at the time of hearing. AR 13, 244.  She is a high school graduate with no post-high school education.  AR 245.  Her past relevant work history includes working on a dairy farm, clerking in a convenience store, waitressing and managing a steakhouse. AR 98, 106, 257-253.  The waitressing job required her to wait on customers , set up tables and clean up after the customers left. It required "very little" lifting and carrying.   AR 104.  Near visual acuity is an occupationally significant characteristic of the waitressing job. AR 126.  The management job required her to unload supplies, hire and fire people, balance the tills, and take the deposits  to the bank. *Id.* AR 365.[4]  Near visual acuity is not, however,  an occupationally significant characteristic of the management job. AR 126.  Both are considered light duty. *Id.*

Plaintiff's  management job also required her to  waitress during the noon hour and tend bar during the  rest of the day. AR 103.  The record suggests Plaintiff quit working full- time in May, 2001.  AR 229.  She regularly worked  part-time until April, 2005. AR 248.  Her part-time job consisted of  helping out at a restaurant  over the noon hour rush by running the cash register.  AR 248.  She didn't really quit that job, "they just don't need  me.  When they need me, they call me." AR 249.  At the time of the hearing, she still "occasionally" performed this work. AR 249.  She has never requested the assistance of Job Service or vocational rehabilitation, nor has she actively looked for employment.  AR 250-51.

---

five days after it is mailed. *Bess v. Barnhart*, 337 F.3d 988, 989 (8th Cir. 2003).  Applying that time frame, Plaintiff filed her Complaint on the last day allowed by the regulations.

[4]Warren Hagenson (a vocational expert) was present at the administrative hearing but did not testify.  AR 242-280.  Prior to the hearing he prepared a document entitled "Past Relevant Work History" which summarized Plaintiff's past relevant work by DOT code number,  each job's occupationally significant characteristics, skill level, physical demands (according to the DOT and SSA regulations and according to the Plaintiff) and the acquired skills necessary.  AR 126.  Plaintiff's attorney stipulated to the admissibility of the of the document (which was labeled 10E) at the beginning of the hearing.  AR 243.

Plaintiff believes she is unable to work because she "can't handle the pain anymore." AR 247. She does not believe she could manage the steakhouse because she is no longer able to do the lifting that was required by that job. AR 252. She explained that she cannot "hang onto anything." *Id.* She also explained that she could not do the required paperwork (balance the tills and take the money to the bank) because her vision is not right and "I can't concentrate long enough and keep them in focus without having to go–to stop and start over all the time." *Id.* Plaintiff also explained that because she has back and leg spasms, she does not sleep well at night resulting in constant fatigue. *Id.* Plaintiff's multiple sclerosis caused a condition called optic neuritis which resulted in damage to the retina in her right eye. AR 245. For nearly twenty years she has had only peripheral vision in that eye. *Id.* She explained that as a result of this condition she has problems focusing her eyes, and she can only read for a short period of time before she has to stop and re-focus. *Id.* On a scale of one to ten, she has level five pain "just about all the time" in her joints, elbows, knees, hips, back, and rib cage. AR 274. Plaintiff's current medications are Crestor for her cholesterol and 1,600 milligrams of Ibuprofen for pain. AR 251. Plaintiff believed that higher doses of Ibuprofen caused her to have an upset stomach and high blood pressure. *Id.* She took an experimental drug for her MS approximately fifteen years ago, but she had a bad reaction to it and has not taken any MS specific drugs since that time. AR 272.

Plaintiff estimated she could sit for twenty minutes to one-half hour before she needed a break, and could stand for about fifteen or twenty minutes before she needed to sit down. AR 270. She walks for twenty minutes at a time on her treadmill at two miles per hour. *Id.* She estimated she could lift and carry ten pounds, but not twenty pounds. AR 271. Her doctors have not placed specific limits on her physical activities, other than telling her to pace herself. AR 272.

Plaintiff lives in a home with her boyfriend and her dog. AR 244, 249.[5] She has a checking account and works on the computer, but she does not pay the family bills. AR 245. Other than her occasional work at the restaurant, Plaintiff's only other work is taking care of the home. AR 249. The house is large, and it takes her four hours to clean one bathroom because her arms "poop out."

---

[5]"Boyfriend" is the word plaintiff used to describe her house mate. AR 254.

4

AR 254.  She spends four to six hours per day doing housework.  *Id.*  She cooks a meal for her boyfriend every three days or so-- otherwise they eat out.  AR 255.  She does the laundry about every ten days.  Her boyfriend vacuums.  AR 256.  She does not do any yard work or gardening.  AR 257. She walks a mile or a mile and a half every day.  AR 257.  Her hobby is sewing quilt tops, which she sends to a friend in Webster who finishes them for her.  AR 257.  Her children are grown and out of the house, but she keeps in touch via e-mail.  She takes care of her dog and does the grocery shopping every couple of weeks.  AR 258-59.  She visits her friend/neighbor a few times a week. AR 260.

Plaintiff also belongs to a golf group in the summer and a bowling league in the winter.  *Id.* She bowls one night a week in the winter, and plays nine holes at a time (with a cart) with her golf group during the summer.  AR 115, 260-61.  She was president of the golf club in 2004.  AR 261. Those duties required her to organize the tournaments, although she only played in one of them.  *Id.* Her motivation for joining the golf group was to get the younger women involved in the sport.  *Id.* Her boyfriend's family has a lake cabin twenty miles from their home, and she spends a lot of time there, where she likes to fish off the dock.  AR 261.  Plaintiff drives, but she does not drive in bad weather or in the dark because of her vision problems.  AR 262.  She stops frequently because her limbs get numb.  AR 263-64.  Her boyfriend farms, but she does not assist with that.  *Id.*  When the administrative hearing was held at the end of January, 2006, Plaintiff was planning to leave the next week for her first trip to Cancun, Mexico.  AR 269.

### B.    Plaintiff's Medical Treatment and Evaluations

Plaintiff treated for spasms in her left arm in February and March of 1997.  The spasms slowly resolved.  She declined a neurology consult and her family physician noted she did not have any neurologic symptoms.  AR 185.  Plaintiff treated briefly for low back pain in 1999.  AR 181. X-rays of her low back at that time were "unremarkable."  *Id.*  She also treated for right heel pain in 1997-98 which was ultimately diagnosed as plantar fasciitis.  AR 182-84.  The plantar fasciitis was treated with injections and resolved.  *Id.*

Plaintiff's family doctor (Dr. Puritun) referred Plaintiff for physical therapy for back pain in

June, 2000. AR 130. The physical therapist noted Plaintiff's symptoms were not consistent with any diagnosis, and believed Plaintiff's symptoms originated with some internal problems (possibly ovarian cysts for which she had been treating with her gynecologist). The therapist recommended further physical therapy only if there were no positive gynecological findings. *Id.* Plaintiff underwent a hysterectomy in October, 2000. AR 134-35. Approximately one month after the surgery her gynecologist (Dr. Berry) noted that she reported a significant improvement in her back pain. AR 145.

Dr. Puritun referred Plaintiff to Dr. Peter Lynch (a neurologist) in September, 2000. AR 151. At that time, Dr. Lynch noted that fatigue was an ongoing problem for Plaintiff. *Id.* He noted that she needed to stop and rest throughout the day. Plaintiff also complained of urinary incontinence. Dr. Lynch also noted Plaintiff had some  muscle twitching and difficulty going up and down stairs in addition to her long-standing vision problems. *Id.* Dr. Lynch started Plaintiff on Ditropan for urinary incontinence and Amantadine for fatigue. AR 152. Dr. Lynch suggested a repeat MRI and immune modulating treatments, but Plaintiff refused "she has no progressive worsening and she has no more major flare- ups. At this stage she would prefer not to avail of any of those treatments. . ." AR 152. Plaintiff saw Dr. Lynch again in April, 2001 (approximately one month before she quit working full-time). She reported leg fatigue and generalized fatigue. AR 150. Dr. Lynch noted that the medication Plaintiff had been taking for fatigue (Amantadine) seemed to be effective. *Id.* After her hysterectomy, Plaintiff  decided to discontinue the medication she had been prescribed for urinary frequency (Ditropan). *Id.* Dr. Lynch again offered a repeat MRI and a proactive immune modulating therapy for her MS, but Plaintiff again declined; "at this stage she feels that as long as she is stable and doing well, that she doesn't want to pursue any of those options, at least for the present." AR 150. Dr. Lynch saw Plaintiff again in September, 2001. She reported that overall she was doing well, but she had a lot of fatigue symptoms and she tired easily. AR 149.  She also reported leg weakness. *Id.* Her exam was essentially normal with the exception of questionable extensor plantar response on the left. Dr. Lynch discontinued one medication (Amantadine) for fatigue and started a new one (Provigil). There were no further visits with Dr. Lynch in the record as of the date of the hearing in January, 2006.

In April, 2003, Plaintiff saw an orthopedic surgeon regarding left hip pain. She noted the pain increased with walking. AR 153. She described a long history of decreased sensation in both lower extremities due to her MS. The physician diagnosed trochanteric bursitis of the left hip. *Id.* Later in April, 2003, Plaintiff cut her hand on a piece of glass and was seen in the emergency room. She received stitches and was discharged. AR 156-157.

In January, 2004, Plaintiff underwent a consultative exam with Dr. Joe P. Chang. AR 159-60. Dr. Chang noted Plaintiff did not take any medications at that time "because medications make her ill." AR 159. He noted her reported twenty-one year history of multiple sclerosis, and weakness in the upper and lower left limbs after prolonged periods of standing or walking. AR 159. His physical exam revealed a 5'6" woman who weighed 190 pounds, blood pressure was 160/100 in no acute distress. She was visually impaired on the right. Her gait was normal and her tender reflexes were diminished on the right side. He noted that she was able to get up and down from the exam table without difficulty and her ability to stoop, climb and handle objects was "fair." Her ability to speak, hear see and travel was "fair" but her ability to stand, sit and walk for eight hours daily was "poor" due to weakness in her lower extremities. AR 160. His impression was 1) history of MS since age twenty eight. No paralysis of extremities with remission. 2) Right eye central vision field defect.

In February, 2004, a non-treating, non-examining DDS physician completed a physical residual functional capacity assessment. AR 163-170. The physician noted her longstanding MS, her left-sided weakness and her complaints of fatigue. AR 164. He noted her right eye problems, her normal gait, and that she currently took no medication. *Id.* The DDS physician assigned exertional limitations as follows: occasionally lift twenty pounds, frequently lift ten pounds, stand/walk six hours out of an eight hour work day, sit with normal breaks for six hours out of an eight hour work day, and unlimited push/pull. AR 164. He assigned no postural or manipulative limitations. AR 165-66. He assigned visual restrictions based on Plaintiff's lack of vision in the right eye. AR 166. He assigned no communicative or environmental restrictions. AR 167.

7

Plaintiff treated with her family doctor (Dr. Puritun) throughout 2001, 2002, 2003 and 2004 for minor issues such as dermatitis, colds, a rash, an arthritic finger and removal of a mole. AR 171-177. None of the notes from these visits mention worsening MS symptoms or fatigue.

Plaintiff saw a neurologist (Dr. Warren Opheim) on a consulting basis on June 23, 2005. AR 202-211. He noted Plaintiff had discontinued both drugs previously prescribed for fatigue (Amantadine and Provigil). Plaintiff reported the Amantadine was ineffective and the Provigil caused her to have insomnia. AR 202. She also reported tingling and numbness in her extremities on the left more than the right. After Dr. Opheim's physical exam, he noted that although she may very well have MS, he wanted further tests including an MRI and a CBC blood panel to confirm. He noted "with her fatigue she should have a CBC panel test . . . to make sure there is not metabolic etiology for this. Certainly fatigue is a common complaint in patients with long-standing MS, though they usually have more of a deficit than this patient has." AR 203. After Dr. Opheim reviewed the MRI and the CBC his assistant added the following note to his chart: "laboratory studies and outside film review by Dr. Opheim and he states the MRI appears to be consistent with MS. He reports that the lab work has a high glucose and a high white count and suggests she follow with her PCP. Mrs. Miller was notified and lab results will be faxed to Dr. Puritun in Britton, SD." AR 203. Dr. Opheim did not complete the "Medical Source Statement of Ability to Work Related Activities (Physical) form. AR 208-211.

Plaintiff followed up with Dr. Puritun regarding her blood sugar levels in July, 2005. AR 212. Dr. Puritun repeated the CBC, which revealed a mild elevation of Plaintiff's blood sugar level. AR 219. He recommended a weight loss program to control her blood sugars and advised that she may need medication in the future if the weight loss program alone did not control the problem. *Id.*

In January, 2006, Plaintiff returned to her family physician complaining of fatigue, breathing problems, and bilateral extremity numbness. AR 232. In March, 2006, she returned to her family physician complaining of a toe injury sustained playing volleyball in the sand and general fatigue. AR 236-237. In April, 2006, she visited her family doctor and reported she had been denied for her

disability claim. She also reported her legs were twitching and bothering her and general muscle weakness was up and down. AR 238.

## DISCUSSION

### A.    Standard of Review

When reviewing a denial of benefits, the court will uphold the Commissioner's final decision if it is supported by substantial evidence on the record as a whole. 42 U.S.C. § 405(g); *Woolf v. Shalala*, 3 F.3d 1210, 1213 (8th Cir. 1993) . Substantial evidence is defined as more than a mere scintilla, less than a preponderance, and that which a reasonable mind might accept as adequate to support the Commissioner's conclusion. *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971); *Klug v. Weinberger*, 514 F.2d 423, 425 (8th Cir. 1975). "This review is more than a rubber stamp for the [Commissioner's] decision, and is more than a search for the existence of substantial evidence supporting his decision." *Thomas v. Sullivan*, 876 F.2d 666, 669 (8th Cir. 1989) (citations omitted). In assessing the substantiality of the evidence, the evidence that detracts from the Commissioner's decision must be considered, along with the evidence supporting it. *Woolf*, 3 F.3d at 1213. The Commissioner's decision may not be reversed merely because substantial evidence would have supported an opposite decision. *Id.* If it is possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's findings, the Commissioner must be affirmed. *Oberst v. Shalala*, 2 F.3d 249, 250 (8th Cir. 1993). "In short, a reviewing court should neither consider a claim de novo, nor abdicate its function to carefully analyze the entire record." *Mittlestedt v. Apfel*, 204 F.3d 847, 851 (8th Cir. 2000)(citations omitted).

The court must also review the decision by the ALJ to determine if an error of law has been committed. *Smith v. Sullivan*, 982 F.2d 308, 311 (8th Cir. 1992); 42 U.S.C. § 405(g). Specifically, a court must evaluate whether the ALJ applied an erroneous legal standard in the disability analysis. Erroneous interpretations of law will be reversed. *Walker v. Apfel*, 141 F.3d 852, 853 (8th Cir. 1998)(citations omitted). The Commissioner's conclusions of law are only persuasive, not binding, on the reviewing court. *Smith*, 982 F.2d at 311.

9

**B.      The Disability Determination and The Five Step Procedure**

Social Security law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416(I), 423(d)(1); 20 C.F.R. § 404.1505. The impairment must be severe, making the claimant unable to do his previous work, or any other substantial gainful activity which exists in the national economy. 42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505-404.1511. The ALJ applies a five step procedure to decide whether an applicant is disabled. This sequential analysis is mandatory for all SSI and SSD/DIB applications. *Smith v. Shalala*, 987 F.2d 1371, 1373 (8th Cir. 1993); 20 C.F.R. § 404.1520. When a determination that an applicant is or is not disabled can be made at any step, evaluation under a subsequent step is unnecessary. *Bartlett v. Heckler*, 777 F.2d 1318, 1319 (8th Cir. 1985). The five steps are as follows:

**Step One:**      Determine whether the applicant is presently engaged in substantial gainful activity. 20 C.F.R. § 404.1520(b). If the applicant is engaged in substantial gainful activity, he is not disabled and the inquiry ends at this step.

**Step Two:** Determine whether the applicant has an impairment or combination of impairments that are *severe*, i.e. whether any of the applicant's impairments or combination of impairments significantly limit his physical or mental ability to do basic work activities. 20 C.F.R. § 404.1520(c). If there is no such impairment or combination of impairments the applicant is not disabled and the inquiry ends at this step. NOTE: the regulations prescribe a special procedure for analyzing mental impairments to determine whether they are severe. *Browning v. Sullivan*, 958 F.2d 817, 821 (8th Cir. 1992); 20 C.F.R. § 1520a. This special procedure includes completion of a Psychiatric Review Technique Form (PRTF).

**Step Three:** Determine whether any of the severe impairments identified in Step Two meets or equals a "Listing" in Appendix 1, Subpart P, Part 404. 20 C.F.R. § 404.1520(d). If an impairment meets or equals a Listing, the applicant will be considered disabled without further inquiry. *Bartlett v. Heckler*, 777 F.2d 1318, 1320 at n.2 (8th Cir. 1985). This is because the regulations recognize the "Listed" impairments are so severe that they prevent a person from pursuing any gainful work. *Heckler v. Campbell*, 461 U.S. 458, 460, 103 S.Ct. 1952, 76 L.Ed.2d 66 (1983). If the applicant's impairment(s) are *severe* but do not meet or equal a *Listed impairment*

10

the ALJ must proceed to step four. NOTE: The "special procedure" for mental impairments also applies to determine whether a severe mental impairment meets or equals a Listing. 20 C.F.R. § 1520a(c)(2).

**Step Four:** Determine whether the applicant is capable of performing past relevant work (PRW). To make this determination, the ALJ considers the limiting effects of all the applicant's impairments, (even those that are not *severe)* to determine the applicant's residual functional capacity (RFC). If the applicant's RFC allows him to meet the physical and mental demands of his past work, he is not disabled. 20 C.F.R. §§ 404.1520(e); 404.1545(e). If the applicant's RFC does not allow him to meet the physical and mental demands of his past work, the ALJ must proceed to Step Five.

**Step Five:** Determine whether any substantial gainful activity exists in the national economy which the applicant can perform. To make this determination, the ALJ considers the applicant's RFC, along with his age, education, and past work experience. 20 C.F.R. § 1520(f).

**C.    Burden of Proof**

The Plaintiff bears the burden of proof at Steps One through Four of the Five Step Inquiry. *Barret v. Shalala*, 38 F.3d 1019, 1024 (8th Cir. 1994); *Mittlestedt v. Apfel*, 204 F.3d 847, 852 (8th Cir. 2000); 20 C.F.R. § 404.1512(a). The burden of proof shifts to the Commissioner at Step Five. "This shifting of the burden of proof to the Commissioner is neither statutory nor regulatory, but instead, originates from judicial practices." *Brown v. Apfel*, 192 F.3d 492, 498 (5th Cir. 1999). The burden shifting at Step Five has also been referred to as "not statutory, but . . . a long standing judicial gloss on the Social Security Act." *Walker v. Bowen*, 834 F.2d 635, 640 (7th Cir. 1987).

**D.    The ALJ's Decision**

The ALJ issued a sixteen page, single-spaced decision on March 30, 2006. The ALJ's decision discussed steps one through four of the above five-step procedure. At step one, the ALJ found Plaintiff had not engaged in any substantial gainful activity since her disability onset date of May 15, 2001. AR 17.

At step two, the ALJ found Plaintiff had the following "severe" impairments: multiple sclerosis (MS) with residual right eye central scotoma. He considered the following medical

11

conditions but ultimately found they were not -severe impairments: disc space narrowing involving the lumbro-sacral spine, history of total abdominal hysterectomy, treatment for left trochanteric bursitis, and borderline diabetes. AR 18.

At step three, the ALJ found Plaintiff's severe impairment (MS) did not  meet or equal the Listings in Appendix 1, Subpart P, Regulation No. 4. AR 18.  In other words, the ALJ found none of the three pertinent criteria (disorganization of motor function,  visual or mental impairment,  and significant reproducible fatigue of motor function with substantial muscle weakness on repetitive activity demonstrated on physical examination (11.09 A, B & C) rendered Plaintiff automatically disabled when applied to her  MS symptoms.  *Id.*

At step four, the ALJ applied *Polaski v. Heckler*, 739 F.2d 1320 8th Cir. 1984) and 20 C.F.R. § 1529 to evaluate Plaintiff's subjective complaints. He compared Plaintiff's subjective complaints to the objective medical evidence,  her prior work record,  her daily activities, the duration, intensity and frequency of her symptoms, the precipitating and aggravating factors, the dosage, effectiveness and side effects of medications and her functional restrictions.   He concluded that "significant problems standing or walking, or handling objects would appear to be inconsistent with the testimony concerning fishing, bowling or golfing.  An inability to sit is inconsistent with her description of daily activities which include television watching and occasional card playing, and her scheduled trip to Mexico the week following the hearing." AR 26.  He noted her ability to bowl, golf and fish without any claim that these activities caused her to lose strength in her extremities or cause her bouts of fatigue. AR 24.

The ALJ accepted that Plaintiff experienced discomfort and generalized fatigue with exacerbations "[h]owever persistently severe pain and fatigue are not consistent with the lack of medical attention as of the alleged disability onset date and within 1 year thereafter, the rather minimal objective medical findings, the current absence of medications or alternative treatment measures, lack of physician discussions concerning functional restrictions, and the level of daily

activities." AR 26. The ALJ was not persuaded that Plaintiff's daily activities were "compromised or significantly disrupted by pain, fatigue or the need to attend to relief measures." AR 23. The ALJ also noted Claimant was receiving no particular medical care for her condition when she discontinued full-time employment in May, 2001. AR 24. Instead medical reports during that time frame reference Plaintiff's refusal to undergo more aggressive treatment for her MS because she was doing well and her condition had not progressed. The ALJ also rejected Plaintiff's self-assigned physical restrictions as inconsistent with her objective clinical findings and her activities of daily living. AR 25-26.    While the ALJ clearly stated that he did not intend to "assail the claimant's integrity" (AR 23) he concluded, nonetheless, that the *Polaski* factors failed to establish her impairments rendered her as significantly limited as she claimed. AR 26.

The ALJ determined Plaintiff had the RFC to perform a significant range of light exertional work activity. AR 22, 26. Specifically, the ALJ found Plaintiff  cannot lift/carry more than 20 pounds occasionally, 10 pounds frequently, she can stand/walk for 6 hours in an 8 hour day (with normal breaks). He found that Plaintiff retained the ability to perform at least light work, provided the work did not require full field of vision for far and near acuity with the right eye or normal depth perception. AR 22. He also found that Plaintiff's ability to perform such work within the visual restrictions was not inconsistent with the reports of the physical and neurological consultative exams of January 2004 and June 2005. *Id.* The ALJ specifically rejected Dr. Chang's opinion dated January 26, 2004 as based on Plaintiff's subjective reports rather than Dr. Chang's objective examination.

Given these findings, the ALJ determined Plaintiff retains the residual functional capacity to perform her past relevant work as the manager of a steak house. AR 26. In making this finding the ALJ relied upon the Past Relevant Work Summary prepared by the vocational expert (VE) and admitted into the record upon stipulation of the parties during the administrative hearing. AR 26. According to that summary, the managerial job is a light duty, skilled job requiring frequent reaching, handling, talking and hearing. Frequent near visual acuity and depth perception, however, is not required. AR 26-27. The ALJ noted Plaintiff performed the managerial position for many

13

years without apparent difficulty despite the vision difficulties associated with her right eye, and the record does not support any deterioration in that condition. AR 27. The ALJ found no evidence, therefore, that her visual deficits now preclude Plaintiff from performing the managerial job. *Id*. The ALJ determined that Plaintiff is not "disabled." *Id*.

### E.     The Parties' Positions

Plaintiff asserts the Commissioner's determination that she is not disabled is not supported by substantial evidence. In support of her position Plaintiff makes two arguments : (1) The ALJ failed to properly develop the record when he relied upon the vocational expert's written summary instead of calling him to testify at the hearing; and (2) the ALJ's credibility determination was flawed by his failure to properly develop the record and his incorrect assumptions. The Plaintiff requests reversal or remand for further hearing.

The Commissioner asserts that because the ALJ properly developed the record at step four of the analysis and properly evaluated Plaintiff's credibility, his residual functional capacity determination and ultimately his determination that Plaintiff is not disabled are all supported by substantial evidence. The Commissioner asserts therefore, that the ALJ's decision is supported by substantial evidence and free of legal error and should be affirmed.

### F.     Analysis

### 1.     The ALJ's Duty to Develop the Record at Step Four

The parties stipulated the VE's "Past Relevant Work Summary" (AR 126) into evidence at the beginning of the hearing. AR 243. The summary indicates near acuity is an occupationally significant characteristic of Plaintiff's past relevant work of waitressing and bartending, but not of managing a steakhouse. AR 126. The ALJ relied upon this information in deciding Plaintiff was capable of returning to her past relevant work, and therefore that she was not disabled. AR 26-27. Plaintiff asserts she suffered prejudice because the ALJ's reliance upon the prepared summary rather than live testimony by the VE left Plaintiff no way to "assess the weight of the opinion rendered by the VE on this summary." Plaintiff's Brief (Doc. 21) at p. 7.

The ALJ is not required to go to inordinate lengths to develop Plaintiff's case, but is required to make an investigation that is not "wholly inadequate" under the circumstances. *Battles v. Shalala*, 36 F.3d 43, 44 (8th Cir. 1994). The ALJ is required to develop the record fairly and fully because Social Security hearings are designed to be a non-adversarial quest to award benefits to deserving applicants. *Id.* at 44. The ALJ has the duty to fully develop the record despite a claimant's representation by counsel. *Shannon v. Chater*, 54 F.3d 484, 488 (8th Cir. 1995). The ALJ is required to order further medical examinations or tests, however, "only if the medical records presented to him [do] not give sufficient medical evidence to determine whether the claimant [is] disabled." *Barrett v. Shalala*, 38 F.3d 1019, 1023 (8th Cir. 1994). The appropriate inquiry is whether Plaintiff was prejudiced or treated unfairly by how the ALJ developed the record; absent unfairness or prejudice, remand is inappropriate. *Onstad v. Shalala*, 999 F.2d 1232, 1234 (8th Cir. 1993). Also, if the Plaintiff is represented by counsel it is of some relevance that counsel had the opportunity but did not do what the Plaintiff now complains about. *Shannon*, 54 F.3d at 484 (that Plaintiff's counsel did not obtain medical records suggests they were of minor importance); *Onstad*, 999 F.2d at 1234 ("while the ALJ has a duty to develop the record fully and fairly, even when a claimant has a lawyer, it is of some relevance to us that the lawyer did not obtain . . . the items that are now being complained about . . ."). In this instance, it is of some relevance that Plaintiff's counsel was afforded but declined  the opportunity at the administrative hearing to:  (1) ask questions; (2) offer evidence and/or (3) give closing statements. AR 277-279.

The Plaintiff bears the burden of showing her impairments prevent her from performing her past relevant work at step four of the five step analysis. *Dixon v. Sullivan*, 905 F.2d 237, 238 (8th Cir. 1990). The Eighth Circuit has held that the Commissioner need not produce vocational expert testimony until the burden shifts to the Social Security Administration at step five. *Conley v. Bowen*, 781 F.2d 143 (8th Cir. 1986). Plaintiff claims the ALJ's failure to elicit live testimony rather than a written summary from the VE caused her prejudice in a couple of ways. First, Plaintiff asserts the steakhouse manager job as she performed it also included some bartending and waitressing responsibilities (which do require near visual acuity). The relevant  inquiry, however, is whether Plaintiff retains the residual functional capacity to perform the functional demands and job duties

of the occupation either as she performed them or as generally required by employers throughout the national economy. *See* SSR 82-61:

> Under sections 404.1520(e) and 416.920(e) of the regulations, a claimant will be found to be "not disabled" when it is determined that he or she retains the RFC to perform:
>
> 1.  The actual functional demands and job duties of a particular past relevant job; or
> 2.  The functional demands and job duties of the occupation as generally required by employers throughout the national economy.

The ALJ's reliance on the written summary regarding the functional demands of a food service manager rather than obtaining live testimony from the VE about Plaintiff's particular past relevant work was not prejudicial to the Plaintiff.

Plaintiff also asserts that the information contained in the summary regarding the occupationally significant characteristics  of her past relevant jobs (including the steakhouse manager job which the ALJ found she remained capable of performing) was gleaned from a publication (the *Guide for Occupational Exploration*)  which has not been recognized as authoritative by the SSA.  The relevant regulation provides in part: 20 C.F.R. § 404.1565(b)(2):

> (2) Determining whether you can do your past relevant work.  We will ask you for information about work you have done in the past.  We may also ask other people who know about your work.  (See 404.1565(b).  We may use the services of vocational experts or vocational specialists, or other resources, such as the "Dictionary of Occupational Titles" **and its companion volumes and supplements**, published by the Department of Labor, to obtain evidence we need to help us determine whether you can do your past relevant work, given your residual functional capacity . . . ."

(emphasis added).  The Eighth Circuit has cited with approval the *Guide for Occupational Exploration* as such a supplement to the Dictionary of Occupational Titles. *See, Titus v. Callahan*, 133 F.3d 561, 562-63 (8th Cir. 1997). *See also, Oyola-Rosa v. Secretary of Health and Human Services*, 981 F.2d 1245 (1st Cir. 1992) (expressly approving the use of the GOE).  It was not prejudicial error, therefore, for the ALJ to rely upon the VE's exhibit which referred to the Guide for Occupational Exploration when deciding whether Plaintiff was capable of returning to her past relevant work.

## 2.    The ALJ's Credibility Finding

"Where adequately explained and supported, credibility findings are for the ALJ to make." *Lowe v. Apfel*, 226 F.3d 969, 972 (8th Cir. 2000). If the ALJ's credibility determination is supported by substantial evidence, that the reviewing judge  may have decided differently is not justification for reversal. *Strongson v. Barnhart*, 361 F.3d 1066, 1070 (8th Cir. 2004). The ALJ's credibility finding must only be supported by "minimally articulate reasons for crediting or rejecting evidence of disability" *Id.*

In order to properly assess a claimant's credibility, the ALJ must consider not only the objective medical evidence, but all the evidence including the Claimant's prior work history, observations by third parties and doctors regarding daily activities, the duration, frequency and intensity of the pain, precipitating and aggravating factors, and the dosage, effectiveness and side effects of medication and functional restrictions. *Id. See also Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984); 20 C.F.R. § 404.1529(c)(3). The ALJ is not required to discuss methodically each *Polaski* consideration, so long as he acknowledged and examined those considerations before discounting the claimants's subjective complaints. *Lowe*, 226 F.3d at 972.

When a Plaintiff claims the ALJ failed to properly consider her subjective pain complaints, the duty of the Court is to ascertain whether the ALJ considered *all* of the evidence relevant to the Plaintiff's complaints of pain under the *Polaski* standards and whether the evidence so contradicts the plaintiff's subjective complaints that the ALJ could discount her testimony as not credible. *Masterson v. Barnhart*, 363 F.3d 731, 738-39 (8th Cir. 2004) (emphasis added). It is not enough that the record contains inconsistencies; the ALJ must specifically demonstrate that he considered all the evidence. *Id.*

With these standards in mind, the ALJ's credibility finding must be affirmed.  The ALJ recited the *Polaski* factors on page 11 of his written opinion (AR 23).  He carefully explained that while he did not intend to "assail the claimant's integrity" the four page discussion which followed

17

was necessary so that her subjective complaints could be properly considered in evaluating her residual functional capacity for work. *Id.* The task for the Court, therefore, is to determine whether the ALJ properly considered all the record evidence when he made that determination.

The ALJ cited some of Plaintiffs claims which he found inconsistent with her claimed inability to maintain substantial gainful employment. First, the ALJ discussed Plaintiff's work record. He noted her consistent work as a positive feature. Also noted, however, was that Plaintiff quit full-time work in May 2001 (although she continued part-time work apparently through the date of the hearing on an as-needed basis) because she claimed she suffered from extreme fatigue and weakness. AR 23. The ALJ noted, however, that Plaintiff did not report extreme weakness or fatigue to her physicians during this time frame. Medical reports in April in September of 2001 reported some fatigue, but also report that Plaintiff believed her prescribed medication for fatigue was effective, and she refused additional treatment for MS symptoms because she felt she was stable and doing well. AR 150.

The ALJ also discussed Plaintiff's daily activities. He noted that she does keep a large house, albeit she claims it takes her several hours to clean one bathroom. Otherwise, she is able to drive, cook, and go out for lunch nearly every day. AR 24. She does the laundry, participates in a golf club and a bowling league, and spends time fishing at the family lake cabin.[6] The ALJ noted the inconsistency in Plaintiff's claim that she could no longer perform her duties as the manager of the steakhouse because of fatigue and loss of strength in the upper extremities, yet activities such as bowling, golfing and fishing did not seem to pose any problems. AR 24. He also noted that Plaintiff's description of the preceding day, while it included watching television, did not include napping or resting as a pain or fatigue relief measure. *Id.* Finally, the ALJ observed that Plaintiff

---

[6]In this section of his opinion the ALJ also commented on the Plaintiff's planned trip to Cancun, Mexico and stated he "must assume that an individual traveling to Mexico for a winter vacation would have recreational plans such as golfing, shopping and sightseeing." Although the Plaintiff did sustain an injury while playing volleyball in Mexico (AR 231) the ALJ should base his credibility findings on record evidence instead of assumptions. This comment is disregarded for purposes of determining whether the ALJ's ultimate conclusion is supported by substantial evidence.

continued to waitress on an "as-needed" basis. "While this may not amount to significant work activity, it again goes against accepting that a typical day is disrupted by pain or fatigue to the extent that there is little or no room for other responsibilities." AR 24.

Next the ALJ discussed the onset, duration, frequency and intensity of symptoms and the precipitating and aggravating factors and medications. AR 24. He noted that when Plaintiff visited the neurologist in April, 2001, there was no indication that her MS symptoms had deteriorated as of that date to explain her departure from the workplace one month later. *Id.* She stated during the hearing that she quit work because she could no longer handle the pain and fatigue caused by night-time muscle spasms, yet no significant change in these complaints were was expressed to her medical providers during the relevant time frame. *Id.* Additionally, while fatigue is mentioned in the medical records, it appears to be controlled by medication and is not described as debilitating. AR 25. Ultimately the ALJ accepted that the Plaintiff experiences some fatigue and discomfort, but did not accept that her fatigue was debilitating in light of her overall lack of medical attention since her alleged onset date, the lack of objective findings, and the virtual lack of treatment she has received for her MS symptoms. AR 25.

The ALJ noted the record was scarce as to precipitating and aggravating factors. *Id.* He acknowledged Plaintiff was incapable of heavy exertional activity on a regular basis and that protracted periods of walking would produce lower extremity weakness. *Id.* These symptoms are controllable, however, and the ALJ noted again Plaintiff's lack of routine medical attention for exacerbations of MS symptoms or extreme pain or fatigue. He also noted the lack of any medication except over-the-counter Ibuprofen. AR 25. He also noted Plaintiff discontinued medications which had been specifically prescribed for fatigue, allegedly because of side-effects which had never been reported to her treating neurologist. *Id.* Also significant to the ALJ was Plaintiff's refusal to explore alternative MS treatment options. *Id.* "In all, the lack of regular physician visits and lack of medications go against accepting that pain is persistently severe or that MS symptoms are debilitating." AR 25.

19

The ALJ also closely examined Plaintiff's testimony about her functional restrictions. He compared her claim that she cannot sit or stand more than 20 minutes to the relatively normal objective medical examinations. AR 26. He also compared her claims of inability to hold onto items with her medical exams which reveal symmetric and normal upper extremity strength and her own testimony regarding fishing, bowling and golfing. *Id.* The ALJ found that pain and fatigue related loss of concentration and attention to task was inconsistent with Plaintiff's description of daily activities and recreational outlets. *Id.*

The ALJ concluded by finding the Plaintiff's capacity for light work (with certain visual restrictions) was not compromised by pain, fatigue, numbness or similar features and that she retained the residual functional capacity for performing light duty work which did not require full central visual acuity in the right eye or normal depth perception. AR 26. As such, he found she was capable of returning to her past relevant work as the manager of a steak house. *Id.*

The ALJ carefully considered the entire record and thoroughly reviewed the appropriate factors to evaluate Plaintiff's subjective complaints in comparison to the objective medical evidence. The ALJ's decision is supported by substantial evidence. It is important that the ALJ acknowledged Plaintiff does suffer from pain and fatigue, but not disabling pain and fatigue. AR 25. "While pain may be disabling if it precludes a claimant from engaging in any form of substantial gainful activity, the mere fact that working may cause pain or discomfort does not mandate a finding of disability." *Jones v. Chater*, 86 F.3d 823, 826 (8th Cir. 1996) (citation omitted).

## CONCLUSION

For the reasons discussed above, the Commissioner's denial of benefits is supported by substantial evidence in the record. It is recommended to the District Court that the Plaintiff's Motion for Summary Judgment (Doc. 20) be DENIED, the Commissioner's denial of benefits be AFFIRMED, and the Plaintiff's Complaint be DISMISSED, with prejudice and on the merits.

## NOTICE TO PARTIES

The parties have ten (10) days after service of this Report and Recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1), unless an extension of time for good cause is obtained.  Failure to file timely objections will result in the waiver of the right to appeal questions of fact.  Objections must be timely and specific in order to require de novo review by the District Court.

Thompson v. Nix, 897 F.2d 356 (8th Cir. 1990).

Nash v. Black, 781 F.2d 665 (8th Cir. 1986).

Dated this _16th_ day of October, 2007.

                                           BY THE COURT:

                                           John E. Simko
                                           United States Magistrate Judge

ATTEST:
JOSEPH HAAS, Clerk

By_____, Deputy