

UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

NORTHERN DIVISION

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | |
|---|---|
| ROSEANNE E. MILLER, | CIV 06-1039 |
| Plaintiff, | |
| -vs- | ORDER AND OPINION |
| JO ANNE B. BARNHART, Commissioner of Social Security, | |
| Defendant. | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

The Commissioner of Social Security entered a final decision denying to plaintiff disability and medical benefits commencing on May 15, 2001, under Title II of the Social Security Act. Plaintiff filed an application for benefits on July 23, 2003. Her claim was denied initially in February of 2004 and on reconsideration in April of 2004. Upon her request, a partial hearing was held on May 4, 2005. No transcript is available as to that hearing. However, during the second hearing (held on January 27, 2006) the Administrative Law Judge ("ALJ") states that the first hearing was postponed (i.e. continued) to facilitate a further neurological evaluation of plaintiff. Such examination had been requested by the ALJ to better develop the record. Plaintiff had the same attorney at both hearings. This attorney no longer represents plaintiff. Her present attorneys had no involvement in the hearings conducted by the ALJ. Upon request, the neurological evaluation was received. Plaintiff's then attorney had requested more testing and an evaluation by a rehabilitation specialist. That was accomplished.

On March 30, 2006, the ALJ denied plaintiff any relief and affirmed previous denials. On May 19, 2006, plaintiff asked the Appeals Council to review the decision of the ALJ. On August 2, 2006, the Council denied the request for review. Plaintiff then came to United States District Court.

Plaintiff moved for a summary judgment (Doc. 20). I referred this matter to United States Magistrate Judge John E. Simko for a report and recommendation.

Judge Simko entered his report and recommendation (Doc. 26) on October 16, 2007, recommending that the motion be denied, that the denial of benefits be affirmed, and that plaintiff's complaint be dismissed with prejudice and on the merits. Plaintiff filed timely objections to it (Doc. 28).

What are the standards for review? This court is obligated to follow the same scope of review performed by the United States Court of Appeals for the Eighth Circuit. "We will affirm the ALJ's findings if supported by substantial evidence on the record as a whole." Beckley v. Apfel, 152 F.3d 1056, 1059 (8th Cir. 1998). "Substantial evidence is less than a preponderance, but enough that a reasonable mind might accept it as adequate to support a decision." *Id.* A reviewing court "may not reverse merely because substantial evidence would [also support] an opposite decision." Terrell v. Apfel, 147 F.3d 659, 661 (8th Cir. 1998). "In short, a reviewing court should neither consider a claim de novo, nor abdicate its function to carefully analyze the entire record.. *Wilcutts v. Apfel*, 143 F.3d 1134, 1136 (8th Cir. 1998) (quoting *Brinker v. Weinberger*, 522 F.2d 13, 16 (8th Cir. 1975)." Mittlestedt v. Apfel, 204 F.3d 847, 851 (8th Cir. 2000).

"Administrative hearings are not adversarial hearings. Cox v. Apfel, 160 F.3d 1203, 1209 (8th Cir. 1998). Accordingly, the ALJ, on behalf of the Commissioner, is charged with the duty of fully and fairly developing the facts of the case. *Id.* This duty is enhanced when the claimant is without the benefit of counsel. *Id.* Where the ALJ fails to fully develop the record, this court may remand for the taking of further evidence. Payton v. Shalala, 25 F.3d 684, 686 (8th Cir. 1994)." Hildebrand v. Barnhart, 302 F.3d 836, 838 (8th Cir. 2002).

Judge Simko fully recognized and discussed the standards of review set forth above. He did state that "it is of some relevance that Plaintiff's counsel was afforded but declined the opportunity at the administrative hearing to (1) ask questions; (2) offer evidence and/or (sic) (3) give closing statements." Plaintiff's then attorney was also offered the chance to make an opening statement and declined the opportunity. I agree that there is some relevance to all such matters. Shannon v. Chater, 54 F.3d 484 (8th Cir. 1995). We also know that the ALJ had seen

2

to it that the vocational expert ("VE") was present and readily available for questioning. Plaintiff and her attorney would have known at that time that the "past relevant work summary" (AR 126) (which was admitted into evidence by stipulation of the parties) indicates that while near visual acuity is an occupationally significant characteristic of plaintiff's past relevant work of being a waitress and a bartender, it is not a significant characteristic of managing a restaurant/lounge, a/k/a/ a steakhouse. AR 126. They would also have known that, at the hearing, it was plaintiff's burden to show that her impairments prevented her from performing her past relevant work at step four of the five step analysis.

Plaintiff was born on September 29, 1955. She has a 15 year work history. This includes working as a waitress, bartender, and manager of a restaurant/lounge. Up to the date of the last hearing, she had continued to work occasionally as a waitress on a very limited basis. Her claim to not being able to work is based primarily upon claimed pain levels, claimed spasms in her legs, and claimed loss of sleep each night. Her significant loss of vision in her right eye dates back to when plaintiff was 28 years of age. That would have been in 1983. She had and has some difficulty while reading but is able to do so. According to the plaintiff, she can do a "little reading at a time and then must stop, refocus and then resume reading." She was obviously able to work these many years despite the problems with her right eye. Specifically, she was the manager of the so-called "steak house/bar" for seven years. In response to a question from the ALJ, plaintiff testified that she could not return to such work because "her vision doesn't allow her to work with numbers whereby she could concentrate on paper work." There is no medical or any other evidence that her visual problems have changed since 1983. She has a driver's license, restricted only as to corrective lenses. Plaintiff raised no claim of visual acuity causing disability other than in response to the ALJ's question.

Judge Simko carefully and completely discussed all relevant evidence and carefully and completely discussed why the ALJ ruled as he did. There is no need to repeat all those matters in this Order and Opinion. I adopt them all. Judge Simko also read carefully the nearly 16 single spaced pages of the decision of the ALJ, as I have. The ALJ did state that the VE appeared and testified. We know, of course, that the VE did not testify orally but simply presented a written report. The report was admitted into evidence. There is no controversy about evidentiary

matters. The possibly erroneous `implication of the ALJ that the VE presented oral testimony is immaterial in this case.

Realizing that plaintiff and her new attorneys are passionate about their claims that justice has been thus far denied here, I have many concerns about the plaintiff's objections to the report and recommendation. Plaintiff and her new attorneys first accuse Judge Simko of endorsing "clever sandbagging" by the ALJ. This is a gratuitous attack on Judge Simko and is improper. Neither Judge Simko nor this court would endorse "clever sandbagging."

The objections mostly level serious and repeated claims of illegal, unethical, and improper conduct on the part of the ALJ. The Rules of Professional Conduct do not permit such accusations (unless supported by detailed evidence) in briefs or arguments. Plaintiff suggests on page one that the ALJ must have had *ex parte* contacts with the VE and that the ALJ was preparing to lay some trap for plaintiff and her attorney. On page two, plaintiff and her new attorneys accuse the ALJ of misrepresenting matters and of having prompted the VE prior to the hearing. These are very serious accusations attacking the integrity of not only a judge but a member of the Bar. There is nothing in the record to support such allegations. Plaintiff's present attorneys would have no idea as to what took place at the hearings other than by reading the transcript of the second hearing. Were such allegations made in a brief before the South Dakota Supreme Court, the Court would order such portions of the brief stricken from the record.

It is one thing to claim that a judge was mistaken or did not understand something. It is quite another matter to launch the missiles here launched. Plaintiff's present attorneys claim that the ALJ should have questioned the plaintiff about her experiences as a restaurant/lounge manager. They do not explain why, if such evidence was important, the then attorney for plaintiff asked no questions. It would and should have been clear to all in attendance that if the VE, in a written report, singles out two occupations as requiring visual acuity and fails to include another, i.e. restaurant/lounge manager, the implication is clear: visual acuity better than what plaintiff possesses is not required to be such a manager. It also would have been clear to everyone that the plaintiff has a very long history of functioning with the visual problems she has. She has a very long history of functioning not only as a manager but also as a waitress and bartender. How a claim could even be made as to inability to function based upon vision

4

problems, taking into account the actual history, is unclear. It would have been frivolous for plaintiff's then attorney to even raise such a claim.

Plaintiff, in her well written four page hand written letter to the Appeals Council makes no mention of any claimed visual problems. Likewise, in her request for reconsideration, she makes no mention of any claimed visual problems. Nor is there any mention of such in her "request for hearing by administrative law judge." Question 26 of the Daily Activities Questionnaire states: "Please explain how your condition keeps you from working." Plaintiff answered: "The walking and just being on my feet in general makes me so fatigued. The incontinence and having to wear a diaper or pad all the time."

Plaintiff and her new attorneys also claim that the ALJ was not interested in "being up front and transparent" but was "interested in cleverly constructing a denial of benefits without having the VE testify at all." They further state: "This holding back of his thought processes so that Miller could not address them was sandbagging pure and simple." These allegations have no basis in fact or in law. There is no rule requiring any judge to discuss or disclose "thought processes" as the judge listens to the evidence. They also claim that the ALJ was just "making things up." They claim that the ALJ "lulled the hearing counsel into a belief that the ALJ had decided to award benefits." They claim the lawyer "should be pardoned for thinking the ALJ was signaling that he was going to award benefits." There is no basis in the record for any of these allegations and they are clearly improper. Neither plaintiff nor her present attorneys would have any idea what plaintiff's then attorney was thinking, let alone what the ALJ was thinking.

Plaintiff points out that the ALJ assumed that someone vacationing in Mexico would have recreational plans, such as golfing, shopping, and sightseeing. Judge Simko specifically gave no weight to such assumptions and neither do I. This is despite the fact that plaintiff has had a long history of golfing and bowling in South Dakota and had been injured while playing sand volleyball in Mexico.

This court has conducted a *de novo* review of the entire administrative record. I have not, of course, considered the claim *de novo* because I am prohibited from doing so. The ultimate decision and ruling of the ALJ is supported by substantial evidence under the standards of review. The ALJ fully and fairly developed the record. The report and recommendation of the

magistrate should be adopted. The plaintiff's motion for summary judgment (Doc. 20) should be denied. The denial of benefits should be affirmed. The complaint of the plaintiff should be dismissed, with prejudice and on the merits as to the time periods in question.

Now, therefore,

IT IS ORDERED, as follows:

1) The report and recommendation (Doc.26) is adopted.

2) The motion (Doc. 20) for a summary judgment is denied.

3) The denial of benefits is affirmed.

4) The complaint of the plaintiff is dismissed, with prejudice, and on the merits as to the time periods in question.

Dated this _1st_ of November, 2007.

BY THE COURT:

_Charles B. Kornmann_
CHARLES B. KORNMANN
United States District Judge

ATTEST:
JOSEPH HAAS, CLERK

BY: _Barbara J. Paepke_
DEPUTY
(SEAL)